UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the September 17, 2011 "Star Power": Mayweather/Ortiz Fight Program, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-03357-B |
| 1) T O Ventures, LLC, individually and d/b/a PRIVADO, PRIVADO NIGHTCLUB, and LUXX; and 2) OBI IBETO, individually and d/b/a PRIVADO, PRIVADO NIGHTCLUB, and LUXX, | § § § § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Final Default Judgment (doc. 10), filed by Plaintiff J&J Sports Productions, Inc. on September 8, 2014. Plaintiff seeks a default judgment on its claims against Defendants T O Ventures and Obi Ibeto, both individually and d/b/a Privado, d/b/a Privado Nightclub, and d/b/a Luxx. For the reasons that follow, the Motion is **GRANTED in part** and **DENIED in part.**

I.

BACKGROUND

This case involves claims under the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (the "FCA"). Plaintiff J&J Sports Productions, Inc. markets and licenses

closed-circuit, pay-per-view prizefighting events to be viewed at commercial establishments. Doc. 10-1, Pl.'s Ex. A, Affidavit of Thomas P. Riley ("Riley Aff."), App. 6. Plaintiff acquired the proprietary rights to exhibit and sublicense the right to exhibit the September 17, 2011 broadcast "Star Power": Floyd Mayweather, Jr. v. Victor Ortiz Championship Fight Program, including undercard or preliminary bouts (the "Event"). Doc. 1, Compl. ¶ 5; Pl.'s Ex. A, Riley Aff., App. 6; Pl.'s Ex. A-1, App. 13. Plaintiff marketed and distributed exhibition rights to the Event to commercial locations throughout Texas in exchange for a fee. Compl. ¶¶ 5, 7. To prevent unlicensed establishments from exhibiting the Event, the transmission was electronically coded or "scrambled," and establishments that had obtained the necessary license to broadcast the Event were provided with electronic decoding equipment. *Id.* ¶¶ 9, 11. Plaintiff alleges that Defendants did not contract to obtain the rights to broadcast the Event. *Id.* ¶ 12. Nonetheless, on September 17, 2011, Plaintiff avers that Defendants broadcasted the Event to patrons of their establishment, Privado Nightclub. *Id.*

Plaintiff filed the present case on September 16, 2014, asserting that Defendants willfully violated the FCA for commercial gain. *Id.* ¶¶ 12–13, 17–18. Plaintiff thus maintains that it is entitled to an award of statutory and additional damages pursuant to the FCA, a permanent injunction enjoining Defendants from intercepting or exhibiting future programs without a license to do so, as well as court costs, attorneys' fees, and pre- and post-judgment interest. *Id.* at 5.

Defendants were served with process on June 2, 2014 (doc. 7), but did not answer or otherwise respond by the appropriate deadline. Upon Plaintiff's request, the Clerk of Court entered Defendants' default on April 7, 2015. Doc. 11. On the same day, Plaintiff filed the present Motion for Final Default Judgment. Doc. 10. Defendants have yet to respond or otherwise appear in this

case.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff. Fed. R. Civ. P. 55(a)–(b). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*
Second, courts assess the substantive merits of the plaintiff's claims and determine whether

there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, courts are to assume, that due to its default, defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

*A.   Whether the Entry of Default Judgment Is Appropriate*

After reviewing Plaintiff's Motion in light of the six *Lindsey* factors, the Court finds that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Indeed, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W.*, 2011 WL 4738197,

at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Moreover, Defendants' failure to respond to Plaintiff's Complaint for the past ten months "mitigat[es] the harshness of a default judgment" against it. *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013); *see also Elite v. KNR Group*, 216 F.3d 1080, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining that failure to appear was due to financial privation). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants.

B.   *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendants is deemed to have admitted the allegations set forth in Plaintiff's Complaint. Nonetheless, the Court must review the pleadings to determine whether there is a sufficient basis in the pleadings to support Plaintiff's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, No. 13-11035 (5th Cir. June 10, 2015).

Plaintiff alleges that Defendant "willfully intercepted and/or received the interstate communication of the Event," or, alternatively, "assisted in the receipt of the interstate communication of the Event." Compl. ¶ 12. Plaintiff then avers that Defendants "transmitted, divulged and published [the Event] . . . to patrons within [Defendants' establishment]" in violation of 47 U.S.C. §§ 553 and 605. *Id.* ¶¶ 12, 17–18. Defendants allegedly "infringed upon Plaintiff's exclusive rights" to broadcast the Event "willfully and with the express purpose and intent to secure a commercial advantage and private financial gain." *Id.* ¶ 13.

A person violates § 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Similarly, one violates § 553 by "intercept[ing] and receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). The unauthorized interception of satellite or cable transmissions violates both §§ 553 and 605. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002). Here, Plaintiff's Complaint indicates that the Event was transmitted via an "electronically coded or 'scrambled'" satellite signal, and that Defendants intercepted the Event without authorization, exhibiting it to patrons of their establishment for their own commercial benefit. Compl. ¶¶ 9–10, 12–13. After review, the Court concludes that these allegations are sufficient to provide Defendants with "fair notice" of its claim that Defendants "transmitted, divulged and published [the Event] . . . to patrons within [Defendants' establishment]" in violation of the FCA and state a viable claim for relief.

C.  *Damages*

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson*, 302 F.3d at 524–25). Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James*, 6 F.3d at 370.

A party aggrieved by a violation of § 605 may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages for each violation of the section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just. *Id.* § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, increase the damage awarded by an amount of not more than $100,000. *Id.* § 605(e)(3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorneys' fees. *Id.* § 605(e)(3)(B)(iii).

1.  Statutory Damages

Plaintiff maintains that "it would be impossible to determine the full extent of the profits" it lost and "the additional damages sustained . . . as a result of Defendants' unlawful actions." Doc. 10, Pl.'s Mot. for Final Default Judgment ("Pl.'s Mot.") 5. Thus, Plaintiff requests statutory rather than actual damages, seeking an award of $10,000—the statutory maximum—against Defendants.[1] *Id.*

---

[1] The Court notes that Plaintiff cannot recover under both §§ 553 and 605, even if it can be demonstrated that Defendant violated both. *Al-Waha Enters.*, 219 F. Supp. 2d at 775. Therefore, the inquiry

at 5–6, 10. Plaintiff specifies that Defendants' actions have led it to lose revenue and have deprived it of the "'value, benefits and profits derived' from the unauthorized broadcast of the Event . . . as well as the value of 'business investment, business opportunities and goodwill.'" *Id.* at 5–6 (quoting *Am. Television & Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla.1986)). In support of its request for damages, Plaintiff presents the affidavit of Thomas P. Riley, whose firm was charged with "the discovery, investigation and prosecution of claims arising from the theft or piracy of . . . [the Event]." Pl.'s Ex. A, Riley Aff., App. 5–6. In his affidavit, Riley avers that Defendants' actions threaten the existing and ongoing viability of Plaintiff's company. *Id.* at 8–9. By broadcasting programming without complying with the required licensing process, establishments like Defendants are able to charge their patrons no fee or a fee less than what authorized establishments are required to charge. *Id.* at 8–9. Thus, establishments that lawfully broadcast programs lose business and patrons and, accordingly, lose the ability to contract with Plaintiff in order to obtain license to broadcasts. *Id.* Furthermore, patrons who view the illegally broadcasted material at establishments like Defendants might otherwise have attended lawful establishments, "which encourages authorized establishments to continue to purchase additional events." *Id.* at 8. Plaintiff explains that piracy such as Defendants' causes the company to suffer damage to its goodwill, reputation, and right and ability to control and receive fees for the transmission of programs. *Id.* at 8–9.

Courts have assessed various amounts in statutory damages for violations similar to those presented here. *See Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages in the amount of $5,000); *J & J*

---

as to damages will only be based on a discussion of § 605, as it allows Plaintiff a greater recovery. *Id.*

*Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10-CV-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (awarding base statutory damages in the amount of $10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (awarding base statutory damages in the amount of $5,000). In light of the need to deter future violations, and considering the fact that the sublicensing fee here would have been approximately $2,200 had Defendants paid to lawfully broadcast the Event, the Court finds that statutory damages in the amount of $5,000 is reasonable. *See* Pl.'s Ex. A-3, Rate Card; *see, e.g., Al-Waha Enters.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA]."). The Court therefore **GRANTS** Plaintiff's request for statutory damages and awards Plaintiff the sum of $5,000.

 2. <u>Additional Damages</u>

Plaintiff further requests $50,000 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that Defendants' actions "were willful and 'for purposes of direct or indirect commercial advantage or private financial gain.'" Pl.'s Mot. 7. Plaintiff does not present evidence to demonstrate that Defendants willfully violated the FCA, but it insists that Defendants could not have "innocently" accessed the broadcast of the Event given the complexity of intercepting transmissions. *Id.* at 7. Courts have generally found this reasoning to be persuasive given the limited means by which defendants can access closed-circuit, pay-per-view events and the unlikelihood that an establishment could intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit

broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 215282, at *5 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that the evidence and allegations presented by Plaintiff are sufficient to support a finding of willfulness.

Moreover, the record indicates that Defendants exhibited the Event for purposes of direct or indirect commercial gain. The Event was exhibited to approximately ninety-two patrons of Defendants' establishment on several televisions and two large projector screens. Pl.'s Ex A-2, App. 19, 24. While the establishment did not charge a cover for admission, it was equipped with a bar from which patrons likely ordered drinks. Pl.'s Ex A-2, App. 19. Courts have found this fact persuasive in establishing a commercial motive. *See Beck*, 2013 WL 5592333, at *2 (finding commercial motive based on the fact that "patrons purchased food and/or drinks while viewing the Event" and because "it is obvious that commercial establishments show sports programs to draw business, not out of charity."). This Court similarly finds sufficient evidence and allegations to establish Defendants' motive.

Although the FCA allows for additional damages in an amount not greater than $100,000 for willful violations, 47 U.S.C. § 605(e)(3)(C)(ii), courts have varied in their approaches to determining the proper amount to award in cases similar to the present one. *See, e.g.*, *Alima*, 2014 WL 1632158, at *5 (awarding additional damages in the amount of four times the statutory base

award where defendant charged a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Q Café, Inc.*, 2012 WL 215282, at *5 (awarding additional damages in the amount of five times the statutory base award, citing the location of the broadcast in an urban area and the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding additional damages in the amount of three times the base because defendant did not charge a cover charge, only thirty patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding triple damages for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, Plaintiff provides evidence of the auditing visit during which Defendants' violation was observed. Pl.'s Ex. A-2, App. 21. The evidence demonstrates that Defendants' establishment displayed the Event on five screens, including two large projector screens, and that approximately ninety-two patrons were in attendance. *Id.* As previously mentioned, Defendants did not charge these patrons a cover. *Id.* Based on the damages awarded by other courts faced with similar circumstances, the evidence currently before the Court, and the need to deter future violations, the Court finds that additional damages equal to three times the base statutory damages is reasonable. Thus, the Court **GRANTS** Plaintiff's request for additional damages and awards Plaintiff the sum of $15,000.

    3.    <u>Attorneys' Fees and Costs</u>

Under the FCA, the Court is required to order the recovery of full costs, including attorneys' fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks a one-third

contingent fee or, alternatively, attorneys' fees in the amount of $1,000, as well as additional attorneys' fees in the event Defendants file a post-judgment motion or appeals. Pl.'s Mot. 10; Pl.'s Ex. B, Affidavit of David M. Diaz ("Diaz Aff."), App. 32–35. Plaintiff presents the affidavit of its counsel, David M. Diaz, in which he estimates his fee to be $1,000 for his time and work in this case. Pl.'s Ex. B, Diaz Aff., App. 33–34. This sum is based on a rate of $250 per hour and approximately 4 hours of work. *Id.* Given this estimate as well as the evidence and circumstances of the case, the Court finds Plaintiff's request for $1,000 in attorneys' fees to be more reasonable than a one-third contingency fee.

The Fifth Circuit has described the procedure and standard for determining attorneys' fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in

similar cases. 488 F.2d at 717–19.

Although Plaintiff has not offered invoices or other evidence supporting the number of hours its attorney worked on this case, the Court accepts as reasonable Mr. Diaz's estimate of his time and rates given his experience with anti-piracy cases as well as the authorities he provides. Pl.'s Exs. B, Diaz Aff., App. App. 32–33; B-2, Texas Lawyer 2013 Salary and Billing Survey. Accordingly, the Court makes no adjustment to these figures and **GRANTS** Plaintiff's request for $1,000 in attorneys' fees.[2]

Though Plaintiff is entitled to recover costs pursuant to this action, it has neglected to specify the amount of costs it seeks to recover. Moreover, Plaintiff does not provide any evidence establishing the costs it has incurred. As the Court is unable to determine the sum of the costs sought or the manner in which such a sum can be computed, it **DENIES** Plaintiff's request for costs at this time. Plaintiff may, however, provide supplementary briefing and evidence establishing the amount of costs it seeks.

    4.    <u>Permanent Injunction</u>

Lastly, Plaintiff requests a permanent injunction against Defendants to prevent them "from ever intercepting or exhibiting an unauthorized program in violation of the [FCA]." Pl.'s Mot. 11. Under the FCA, a court may grant a final injunction "on such terms as it may deem reasonable to

---

[2] In its proposed order, Plaintiff also includes several conditional grants of attorneys' fees for potential post-judgment and appellate work. Doc. 10-2, Proposed Order 2. Though Plaintiff does not expound upon this request in its Motion, the affidavit of its counsel, David Diaz, lists various requests for fees that are contingent upon the occurrence of post-judgment events. Pl.'s Ex. B, Diaz. Aff., App. 35–36. For example, Plaintiff seeks a conditional award of $10,000 to be granted should Defendant file a "post-judgment, pre-appeal motion," such as a motion to vacate. *Id.* Because this Court has granted reasonable attorneys' fees for the work actually performed, and because Plaintiff has presented no argument or evidence establishing the reasonableness of these additional contingent fees, the Court denies this request.

prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). However, Plaintiff provides no explanation supporting its request for such relief. Additionally, the Court finds such an injunction is unnecessary to the extent it is merely intended to prevent Defendants from violating the FCA. The Court therefore **DENIES** Plaintiff's request for a permanent injunction.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Final Default Judgment (doc. 10). In particular, the Court:

- **GRANTS** Plaintiff's requests for statutory damages in the amount of $5,000 and for additional damages in the amount of $15,000, for a total award of $20,000;
- **GRANTS** Plaintiff's request for attorneys' fees in the amount of $1,000;
- **DENIES** Plaintiff's request for costs of court, pending supplementation of the record;
- **GRANTS** Plaintiff's request for post-judgment interest at the rate of 0.27% on all amounts awarded herein; and
- **DENIES** Plaintiff's request for a permanent injunction.

If Plaintiff is able to provide supplementary briefing and evidence in support of its request for court costs, it is **ORDERED** to do so by **July 3, 2015.**

SO ORDERED.

SIGNED: June 19, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE